IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPTAIN MATTHEW J. JAMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1568-MPT |
| | ) | |
| THOMAS P. GORDON, SHERRY | ) | |
| FREEBERY, COLONEL JOHN L. | ) | |
| CUNNINGHAM, COLONEL DAVID F. | ) | |
| McALLISTER, and NEW CASTLE | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' PARTIAL MOTION TO DISMISS**

Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss Count I of Plaintiff's Amended Complaint for failure to state a claim. Additionally, Defendants Cunningham and McAllister move for dismissal from both Counts of the Amended Complaint. Finally, the Individual Defendants move for dismissal from the Amended Complaint pursuant to the doctrine of qualified immunity. The reasons for this request are set forth more fully in Defendants' Brief in Support of Their Partial Motion to Dismiss, filed contemporaneously with this Motion.[1]

---

[1] Defendants move to dismiss the Individual Defendants from both Counts and to dismiss Count I altogether. Defendants deny the allegations asserted in Count II. But, Defendants reserve answering Count II until after resolution of this motion, so as to prevent "duplicative sets of pleadings" and to avoid "confusion over the proper scope of discovery during the motion's pendency." 5B Wright & Miller, Fed. Practice and Proc. §1346, at p. 45 (2004); Godleswki v. Affiliated Computer Servs., Inc., 210 F.R.D. 571, 572 (E.D. Va. 2002) (majority rule holds "that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion."); Circuit City Stores, Inc. v. Citgo Petroleum Corp., No. 92-7394, 1994 U.S. Dist. LEXIS 12634 at *14 (E.D. Pa. Sept. 7, 1994) (same).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ William W. Bowser*
William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
Email:  wbowser@ycst.com
Attorneys for Defendant New Castle County


NEW CASTLE COUNTY LAW DEPARTMENT

*/s/ Eric L. Episcopo*
Eric L. Episcopo, Esquire (No. 2258)
87 Reads Way
New Castle, DE  19720-1648
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
Email:  eepiscopo@co.new-castle.de.us
Attorneys for Defendants


*/s/ Charles E. Butler*
Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
 ceb@cebutler.com
Attorneys for Defendants Sherry Freebery, Thomas P.
Gordon, and Colonel David F. McAllister, each in their
individual capacity

OBERLY JENNINGS & RHODUNDA, P.A.

*/s/ Kathleen M. Jennings*

Kathleen M. Jennings, Esquire (Bar I.D. 913)
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
 kjennings@ojlaw.com
Attorneys for Defendant Colonel John Cunningham

Dated:   October 31, 2007

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPTAIN MATTHEW J. JAMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1568-MPT |
| | ) | |
| THOMAS P. GORDON, SHERRY | ) | |
| FREEBERY, COLONEL JOHN L. | ) | |
| CUNNINGHAM, COLONEL DAVID F. | ) | |
| McALLISTER, and NEW CASTLE | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
Email: wbowser@ycst.com
Attorneys for Defendant New Castle County

Eric L. Episcopo, Esquire (No. 2258)
NEW CASTLE COUNTY LAW DEPARTMENT
87 Reads Way
New Castle, DE 19720-1648
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
Email: eepiscopo@co.new-castle.de.us
Attorneys for Defendants

Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
 ceb@cebutler.com
Attorneys for Defendants Sherry Freebery, Thomas P.
Gordon, and Colonel David F. McAllister, each in their
individual capacity

Kathleen M. Jennings, Esquire (Bar I.D. 913)
OBERLY JENNINGS & RHODUNDA, P.A.
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
 kjennings@ojlaw.com
Attorneys for Defendant Colonel John Cunningham

Dated:   October 31, 2007

TABLE OF AUTHORITIES ...............................................................................................iv

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF THE ARGUMENT ................................................................................2

STATEMENT OF FACTS ................................................................................................3

    A.   Alleged Protected Activity .................................................................................3

    B.   Alleged Adverse Actions....................................................................................4

ARGUMENT .....................................................................................................................6

  I.    STANDARD OF REVIEW.................................................................................6

    A.   The Standard for Dismissal ................................................................................6

    B.   The Standard for First Amendment Retaliation..................................................7

    C.   The Appropriate Defendants ...............................................................................7

  II.   PLAINTIFF FAILED TO ALLEGE THAT he spoke AS A CITIZEN
       AS OPPOSED TO AN EMPLOYEE .......................................................8

    A.   Plaintiff's Speech Relating to the Hit-and-Run Accident Was Made
       Pursuant to His Official Job Duties ....................................................8

    B.   Plaintiff's Speech Relating to the Expansion Project Was Made
       Pursuant to His Official Job Duties ....................................................9

    C.   Plaintiff's Speech Relating to PAL Finances Was Made Pursuant
       to His Official Job Duties.................................................................12

    D.   Plaintiff's Speech Relating to the Traffic Unit Was Made Pursuant
       to His Official Job Duties.................................................................13

  III.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
       QUALIFIED IMMUNITY................................................................14

    A.   Qualified Immunity Is Appropriate Because the Alleged Speech
       Was Not Protected by the First Amendment .....................................15

    B.   Qualified Immunity Is Appropriate Because the Alleged Speech
       Was Not  "Prototypical Protected Speech" Entitled to "Clearly
       Established" Rights ...........................................................................16

CONCLUSION ................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

Adamow v. Miami Univ.,
  No. C-1-05-104,
  2007 U.S. Dist. LEXIS 72004  (S.D. Ohio Sept. 27, 2007) ............................................ 18

Anderson v. Creighton,
  483 U.S. 635 (1987) ..................................................................................................... 17

Barnes v. McDowell,
  848 F.2d 725 (6th Cir. 1988) ......................................................................................... 13

Battle v. Bd. of Regents.,
  468 F.3d 755 (11th Cir. 2006) ......................................................................................... 9

Bell Atl. Corp. v. Twombly,
  127 S. Ct. 1955 (2007) .................................................................................................... 6

Bennett v. Murphy,
  274 F.3d 133 (3d Cir. 2002) ........................................................................................... 15

Bevis v. Bethune,
  232 Fed. Appx. 212 (4th Cir. 2007) ............................................................................... 15

Bland v. Winant,
  No. 03-6091-SRC,
  2007 U.S. Dist. LEXIS 31094 (D.N.J. Apr. 27, 2007) ...................................................... 9

Brammer-Hoelter v. Twin Peaks Charter Acad.,
  492 F.3d 1192 (10th Cir. 2007) ...................................................................................... 13

Burns v. Borough of Glassboro,
  No. 05-3034-JBS,
  2007 U.S. Dist. LEXIS 42069 (D.N.J. June 11, 2007) ..................................................... 13

Cameron v. Seitz,
  38 F.3d 264 (6th Cir. 1994) ............................................................................................ 16

Campbell v. Galloway,
  483 F.3d 258 (4th Cir. 2007) ..................................................................................... 18, 19

Ceballos v. Garcetti,
  361 F.3d 1168 (9th Cir. 2004) ........................................................................................ 17

Circuit City Stores, Inc. v. Citgo Petroleum Corp.,
  No. 92-7394
  1994 U.S. Dist. LEXIS 12634 (E.D. Pa. Sept. 7, 1994) ..................................................... 1

City of Pittsburgh v. W. Penn Power Co.,
  147 F.3d 256 (3d Cir. 1998) ............................................................................................. 6

Conley v. Gibson,
  355 U.S. 41 (1957) ........................................................................................................... 6

Crossin v. City of Athens,
  No. 06-3014,
  2007 U.S. Dist. LEXIS 46585 (C.D. Ill. June 27, 2007) ................................................. 17

D'Angelo v. Sch. Bd. of Polk County,
  497 F.3d 1203 (11th Cir. 2007) ....................................................................................... 12

Foraker v. Chaffinch,
  No. 06-4086,
  2007 U.S. Dist. LEXIS 20739 (3d Cir. Aug. 30, 2007) ..........................................7, 11, 17

Garcetti v. Ceballos,
  D.C. No. CV-00-1106-AHV (C.D. Cal. 2002) ................................................................. 17

Garcetti v. Ceballos,
  126 S. Ct. 1951 (2006) ................................................................ 2, 6, 7, 8, 14, 17

Godleswki v. Affiliated Computer Servs., Inc.,
  210 F.R.D. (E.D. Va. 2002) .............................................................................................. 1

Green v. Barrett,
  226 Fed. Appx. 883 (11th Cir. 2007) .............................................................................. 15

Harlow v. Fitzgerald,
  457 U.S. 800 (1982) ......................................................................................................... 15

Hartwell v. City of Montgomery,
  487 F. Supp. 2d 1313 (M.D. Ala. 2007) .............................................................16, 18, 19

Heller v. Fulare,
  No. 2004-265,
  2007 U.S. Dist. LEXIS 43325 (W.D. Pa. June 14, 2007) ................................................. 9

Hope v. Pelzer,
  536 U.S. 730 (2002) ......................................................................................................... 16

Hynson v. City of Chester,
  827 F.2d 932 (3d Cir. 1987) ............................................................................................ 14

Mills v. City of Evansville,
    452 F.3d 646 (7th Cir. 2006).................................................................. 14

Morse v. Lower Merion Sch. Dist.,
    132 F.3d 902 (3d Cir. 1997)...................................................................... 6

Mosley v. Bay Ship Mgmt., Inc.,
    174 F. Supp. 2d 192 (D.N.J. 2000)............................................................. 6

Pa. Ben. Guar. Corp. v. White Consol. Indus.,
    998 F.2d 1192 (3rd Cir. 1993)
    cert. denied, 510 U.S. 1042 (1984)............................................................. 6

Phillips v. City of Dawsonville,
    No. 06-16031,
    2007 U.S. App. LEXIS 21730 (11th Cir. Sept. 11, 2007) ............................... 16

Saucier v. Katz,
    533 U.S. 194 (2001) ............................................................................... 15

Savokinas v. Pittston Twp.,
    No. 06-00121,
    2007 U.S. Dist. LEXIS 66979 (M.D. Pa. Sept. 11, 2007) .......................6, 10, 12

Siegert v. Gilley,
    500 U.S. 226 (1991) ............................................................................... 15

Spiegla v. Hull,
    481 F.3d 961 (7th Cir. 2007)..................................................................... 17

Weisbarth v. Geauga Park Dist.,
    No. 06-4819,
    2007 U.S. App. LEXIS 20261 (6th Cir. Aug. 24, 2007) ............................10, 11

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 1

Age Discrimination in Employment Act,
    29 U.S.C. §§ 621-34 ................................................................................. 1

**Other Authorities**

Fed. Practice and Proc.
    §1346, at p. 45 (2004)............................................................................... 1

Fed. R. Civ. P. 12(b)(6) .............................................................................. 3, 6

Fed. R. Civ. P. 15 (a) ................................................................................... 1

Fed. R. Civ. P. 8 ...................................................................................................9, 12

U.S. Const. amend. I.................................................................................................. 3

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Matthew Jamison filed the present matter in this Court on December 30, 2004.  (D.I. 1).  Plaintiff amended his Complaint on June 12, 2006, (D.I. 15), pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15 (a).  Count I is a First Amendment retaliation claim brought pursuant to Section 1983.  42 U.S.C. § 1983.  (D.I. 15 at ¶¶ 136-39).  Count II is an age discrimination claim brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA").  (D.I. 15 at ¶¶ 140-53).  Both Counts allege failure to promote as the underlying adverse action.

Count I names Thomas P. Gordon, Sherry Freebery, Colonel David F. McAllister and Colonel John L. Cunningham as defendants in their individual capacities (the "Individual Defendants").  Counts I and II name New Castle County ("NCC"), and Gordon, Freebery, and McAllister in their official capacities.

Defendants jointly filed a Partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in which they seek dismissal of Count I of Plaintiff's Amended Complaint, and dismissal of the Individual Defendants on the ground of qualified immunity.  This is Defendants' Opening Brief in Support of Their Motion.

## SUMMARY OF THE ARGUMENT

Plaintiff's Amended Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the doctrine of qualified immunity. On the face of the pleadings, it is clear that:

1.   Plaintiff alleges that Defendants Gordon and Freebery are the only relevant decision makers, thus requiring the dismissal of Defendants Cunningham and McAllister from the matter entirely.

2.   Plaintiff's First Amendment retaliation claim is governed by the United States Supreme Court's decision in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).

3.   Pursuant to Garcetti, speech made pursuant the employee's official job duties is not protected by the First Amendment.

4.   Plaintiff proffers four instances of speech he claims to be protected. None of the speech at issue has any of the "prototypical" characteristics of citizen-made speech made in the capacity as a citizen. Each of the four instances of speech were made pursuant to his official duties as a police offer.

5.   Plaintiff's speech is unprotected by the First Amendment. Thus, there was no violation of Plaintiff's constitutional rights.

6.   Because Plaintiff's Amended Complaint fails on its face to allege a constitutional violation, which is necessary to impose liability under Section 1983, Count I must be dismissed.

7.   Alternatively, the Individual Defendants are entitled to qualified immunity because the pre-existing law regarding the constitutional protections available to speech made by a public employee in the context of his official duties was far from "clearly established." The law in this area was and remains unsettled in the courts and subject to debate by reasonable officials.

## STATEMENT OF FACTS[2]

During the relevant time period, Plaintiff Matthew Jamison was a police officer with the NCC Police Department ("NCCPD").  (D.I. 15 at ¶4).  The allegations in his Amended Complaint are based on facts that allegedly occurred in the course of his employment with the NCCPD.

### A.  Alleged Protected Activity

Count I of the Amended Complaint is grounded in the First Amendment of the United States Constitution.  U.S. Const. amend. I.  Plaintiff alleges that he engaged in speech protected by the First Amendment and, in retaliation for that speech, Defendants failed to promote him.  In all, Plaintiff alleges four instances of protected speech.

First, Plaintiff alleges that he refused to participate in the cover-up of a hit-and-run accident.  (D.I. 15 at ¶¶41-44).  Instead, he ordered the officers under his supervision to "uphold the law."  (D.I. 15 at ¶¶41-44).

Second, Plaintiff alleges that he was assigned to the planning committee for the expansion of the NCC Government Center, which housed the NCCPD Headquarters (the "Headquarters Project").  (D.I. 15 at ¶45).  Specifically, he was assigned to the panel responsible for selecting the architectural firm for the Headquarters Project.  (D.I. 15 at ¶¶41-44).  He claims that he made his recommendations based on the qualifications of the firm and reported his recommendation through the chain of command as instructed.  (D.I. 15 at ¶47).  When his supervisor "implied" that he should change his recommendation, Plaintiff declined to do so.  (D.I. 15 at ¶48-49).

Third, Plaintiff claims that, while assigned to duty at the Police Athletic League ("PAL"), he refused to give blank checks to a civilian Board member.  (D.I. 15 at ¶51).  His refusal was based on policy and general accounting principals ("GAP").  (D.I. 15 at ¶51).

---

[2] For the limited purposes of this Motion, all facts and allegations are taken directly from the Amended Complaint.  Defendants do so in compliance with Rule 12(b)(6) without making any representation as to the validity of any portion of Plaintiff's allegations.

Fourth, Plaintiff claims that he opposed Colonel McAllister's staffing initiative to reduce the number of officers assigned to the Traffic Service Unit. (D.I. 15 at ¶¶52-55). Plaintiff wrote McAllister a memo expressing his displeasure with the initiative. (D.I. 15 at ¶53).

Plaintiff alleges that each of these four instances qualify for protection under the First Amendment because they were non-disruptive and on matters of public concern. (D.I. 15 at ¶57).

### B. Alleged Adverse Actions

Plaintiff alleges that, in retaliation for his speech, he was not promoted to Colonel, Lieutenant Colonel, and/or Major. (D.I. 15 at ¶1). The Amended Complaint also seems to assert other adverse actions, though some are without any alleged causal nexus or factual support.

In addition to the claims of failure to promote, Plaintiff also alleges that he was "involuntarily transferred" to various positions and assignments. (D.I. 15 at ¶112(E-G)). First, he alleges that he was reassigned to Building Maintenance and Information Systems ("BMIS"), three months after the hit-and-run accident, despite having "specifically stated to defendant Cunningham" that he did not want to be assigned to BMIS. (D.I. 15 at ¶67). Second, Plaintiff alleges that he was reassigned to PAL seven months after he submitted his architectural rankings despite having "specifically indicated to McAllister that he did not want to supervise PAL." (D.I. 15 at ¶69). Other than Plaintiff's stated preference, the Amended Complaint provides no facts to show that either reassignment could be considered an adverse action or even allege that Defendant McAllister was in some way responsible for the number of reassignments.

Third, in the section of the Amended Complaint titled "Retaliatory and/or Adverse Actions Against Plaintiff," (D.I. 15 at ¶112), Plaintiff claims that he was involuntarily transferred to the Southern Patrol Unit, which "typically is commanded by a Lieutenant." (D.I. 15 at ¶112(F)). The Southern Patrol Unit is not mentioned anywhere else in the Amended Complaint nor is it linked to

any protected activity.[3]  Also in this section, Plaintiff alleges that he "was denied [four] training opportunities" between 2002 and 2003.  (D.I. 15 at ¶112(H)).  Again, this allegation is not mentioned anywhere else in the Amended Complaint and is not causally linked to any protected activity.

---

[3] Counsel for Plaintiff filed this matter and two other, nearly identical claims, in the same week, against the same defendants.  <u>Tobin v. Gordon et al.</u>, No. 04-01211 (D. Del. Sept. 2, 2004); <u>Riddell v. Gordon et al.</u>, 04-01201 (D. Del. Aug. 27, 2004).  Jamison filed his Amended Complaint in June 2006.  (D.I. 15).  Tobin and Riddell also filed Amended Complaints within a week of each other.  (Tobin D.I 14); (Riddell D.I. 15).  The three complaints share many of the same allegations.  In <u>Tobin</u>, the plaintiff asserts that he was transferred to the Southern Patrol Unit in retaliation for his speech.  No. 04-1211 (D.I. 14 at ¶¶15, 16). It is possible that the reference to the Southern Patrol Unit in Jamison's Amended Complaint is a clerical oversight and should be attributed only to the <u>Tobin</u> matter.

**ARGUMENT**

**I.    STANDARD OF REVIEW**

The present Motion is brought pursuant to the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  Count I, a First Amendment retaliation claim brought pursuant to Section 1983, is governed by the standards enunciated in the United States Supreme Court's holding in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).

**A.  The Standard for Dismissal**

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal is appropriate if, accepting as true all of the facts alleged in the Amended Complaint, Plaintiff has not asserted "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  As a result of the Twombly holding, Plaintiff must now "nudge his claims across the line from conceivable to plausible to avoid dismissal thereof."  Savokinas v. Pittston Twp., No. 06-00121, 2007 U.S. Dist. LEXIS 66979, at *5 (M.D. Pa. Sept. 11, 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if Plaintiff's claims are based upon those documents.  Mosley v. Bay Ship Mgmt., Inc., 174 F. Supp. 2d 192, 196 (D.N.J. 2000) (citing Pa. Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993), cert. denied, 510 U.S. 1042 (1984)). The Court need not assume that the plaintiff can prove facts that are not alleged in the complaint.  See City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998).  Nor must the Court consider or regard as true "conclusory allegations of law, unsubstantiated conclusions, and/or unwarranted factual inferences."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

### B. The Standard for First Amendment Retaliation

In Garcetti v. Ceballos, the Supreme Court held that speech made by a government employee pursuant to his official job duties receives no constitutional protection. 126 S. Ct. at 1961. When a public employee speaks in his capacity as an employee, he is not speaking as a citizen and the First Amendment does not insulate his speech from employer discipline. Foraker v. Chaffinch, No. 06-4086, 2007 U.S. Dist. LEXIS 20739, at *20 (3d Cir. Aug. 30, 2007) (citing Garcetti, 126 S. Ct. at 1960). Only speech made as a citizen can qualify for the protections of the First Amendment. Id. Count I of Plaintiff's Amended Complaint cannot withstand a properly supported Motion to Dismiss if the speech was made pursuant to his official duties as a NCC police officer. The dispositive issue, then, is whether the four instances of speech alleged by Plaintiff were made in his capacity as a citizen or as an employee of the NCCPD.

### C. The Appropriate Defendants

As an initial matter, Defendants McAllister and Cunningham should be dismissed from the matter entirely. Although they are both mentioned in the factual background of the Amended Complaint, neither have been identified as wrongdoers in any capacity.

Count I specifically alleges that only Gordon and Freebery were involved in the decisions not to promote Plaintiff. (D.I. 15 at ¶¶73, 81, 82, 90, 91, 94, 95, 96). Plaintiff explicitly acknowledges their exclusive responsibility for the alleged adverse actions. "In reality, defendants Gordon and Freebery made the decision." (D.I. 15 at ¶¶81, 90, 95). Plaintiff even provides an alternative theory of liability, which again excludes McAllister and Cunningham. "Alternatively, Gordon ratified, sanctioned, approved, acquiesced in, permitted or authorized Freebery's decision." (D.I. 15 at ¶¶82, 91, 96).

Count II alleges that Plaintiff was not promoted because of his age. (D.I. 15 at ¶¶140-153). Count II assigns liability only to the County. In fact, it makes no mention of Cunningham at all.

And McAllister is mentioned only as the candidate selected for promotion instead of Plaintiff. (D.I. 15 at ¶145). Because Plaintiff has not alleged that Defendants McAllister and Cunningham shared responsibility for any of the alleged actions, they should be dismissed from the Amended Complaint in its entirety.

## II.  PLAINTIFF FAILED TO ALLEGE THAT HE SPOKE AS A CITIZEN AS OPPOSED TO AN EMPLOYEE

Plaintiff was not acting as a citizen when he engaged in the four alleged instances of alleged speech. As set forth below, Plaintiff made each statement pursuant to his official duties as a police officer. Speech made in the context of Plaintiff's employment is unprotected by the First Amendment. See Garcetti, 126 S. Ct. at 1958-61. Because the Amended Complaint fails to allege any instances of protected speech, Plaintiff's First Amendment Retaliation claim, Count I, must be dismissed.

### A.  Plaintiff's Speech Relating to the Hit-and-Run Accident Was Made Pursuant to His Official Job Duties

The first of the four claimed incidents of protected speech is related to a hit-and-run accident. Plaintiff was the supervising officer on duty at the time of the accident. The Shift Commander reported the accident to Plaintiff, pursuant to protocol. The Shift Commander then told Plaintiff that the son of the County Administrative Officer was a suspect in the accident. (D.I. 15 at ¶15).

Plaintiff alleges that he "told the Shift Commander to conduct a complete investigation irrespective of" the suspect's identity. (D.I. 15 at ¶15). Plaintiff further claims that he "ordered the Shift Commander to uphold the law," and to "proceed as he would with any other hit-and-run accident investigation." (D.I. 15 at ¶15).

In short, Plaintiff alleges that he told a reporting officer to follow the law and perform his job duties without deviation from standard policy. "This speech was not an exercise of free speech by Plaintiff, but was an act taken in furtherance of his duties." Heller v. Fulare, No. 2004-265, 2007

U.S. Dist. LEXIS 43325, at *23 (W.D. Pa. June 14, 2007).  Indeed, there is no activity that can be more appropriately classified as "the core functions of a police officer" than "investigating and reporting crime."  Bland v. Winant, No. 03-6091-SRC, 2007 U.S. Dist. LEXIS 31094, at *13 (D.N.J. Apr. 27, 2007).  It is well within the province of the police to make decisions relating to investigations and arrests.  See id. (finding plaintiff-police officer's speech relating to the arrest and subsequent release of a local politician to be within the core functions of his duties).  Nothing could be more central to the job duties of a police officer than the duty to "uphold the law."  (D.I. 15 at ¶15).  It cannot be disputed that Plaintiff had a "clear employment duty" to ensure that his reporting officers conducted the investigation in compliance with the law.  See Battle v. Bd. of Regents., 468 F.3d 755, 761 (11th Cir. 2006) (finding speech plaintiff admitted that she had a duty to ensure the accuracy and completeness of files for which she was responsible).

**B.    Plaintiff's Speech Relating to the Expansion Project Was Made Pursuant to His Official Job Duties**

The second of the four claimed incidents of protected speech occurred in connection with Plaintiff's involvement with the Headquarters Project.  He alleges that he was assigned to participate on the panel responsible for selecting the architectural firm for the Project.  (D.I. 15 at ¶45).  Plaintiff ranked the firms and submitted his rankings to the designated NCCPD officer, while "operating within his chain of command."  (D.I. 15 at ¶47).

Plaintiff alleges that the officer later "implied" that county officials wanted a particular firm to receive the contract.  (D.I. 15 at ¶48).  Although not explicitly alleged, Plaintiff seems to claim that he interpreted this implied statement as a request to change his rankings.  Plaintiff alleges that he did not change this submission.  He was, in fact, duty-bound not to change the rankings.  (D.I. 15 at ¶50).

As an initial matter, this allegation is insufficient to withstand even the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8(a).  Plaintiff does not actually allege that he engaged in any speech.  He does not provide any context for his

supervisor's "implied" suggestion that another firm would be preferable.  He does not allege that he was asked ordered to revisit his decision.

In Savokinas v. Pittston Township, the plaintiff's amended complaint contained similarly vague allegations.  2007 U.S. Dist. LEXIS at *9-13 (M.D. Pa. Sept. 11, 2007).  The court dismissed the claim, finding that the plaintiff had failed to carry his burden to allege that his speech was "of public concern" and that his interest in speech outweighed the interests of the defendants."  Id.  The court explained the deficiencies of the complaint:

> Plaintiff has provided no allegations as to the form or context of the speech. The Amended Complaint does not allege **when** the speech occurred, **the forum** where the speech occurred, **the recipients** of the speech, or **the content** of the speech.

Id. (emphasis supplied).  The allegations of Plaintiff's Amended Complaint are equally bare.  The allegations are "insufficient in content, form, and context."  Id. at *11.  These insufficiencies preclude this allegation from serving as a valid basis for a First Amendment retaliation claim.  See id. Even if the Amended Complaint met the minimum pleading standards, the facts as alleged still would require dismissal.

Plaintiff's admission that he was "assigned" to serve on the Headquarters Project panel sufficiently demonstrates that he was acting in his employment capacity.  In short, he was assigned this duty as part of his employment with the NCCPD.   This conclusion is not affected by the fact that service on the panel was not necessarily part of the "official duties" of a police officer.

In Weisbarth v. Geauga Park District, the plaintiff-park ranger argued that her speech was protected because her statement was made to a third-party consultant outside the normal chain of command.  No. 06-4819, 2007 U.S. App. LEXIS 20261, at *14 (6th Cir. Aug. 24, 2007).  The Court of Appeals rejected the argument.  The fact that her speech was made to a third party and not to her superiors was irrelevant.  Id. at *18.  The court explained that her "obligation to aid the consultant might be more accurately termed an *ad hoc* duty that arose in the course of her employment."  Id. at

*14.  Such *ad hoc* duties can fall within the scope of an employee's official responsibilities despite not appearing in any written job description.

The Third Circuit has recently addressed the issue of *ad hoc* job duties in this context. Foraker, 2007 U.S. Dist. LEXIS 20739.  In Foraker v. Chaffinch, the plaintiffs-police officers argued that they were not functioning within the scope of their employment duties when they made statements regarding the conditions of the indoor firing range where they were assigned as instructors.  2007 U.S. Dist. LEXIS at *2.  The range was closed after plaintiffs made numerous complaints through the chain of command.  Id. at *4.  Plaintiffs provided additional statements to the State Auditor's office during its subsequent investigation.  Id.

The Third Circuit recognized that the plaintiffs' formal job descriptions did not include the reporting of problems at the firing range.  Id. at *30  Yet this was not dispositive.  The court held that the complaints were employee-speech not citizen-speech.  Several factors led to this finding.

First, the court pointed out that the plaintiffs were paid for their work at the firing range, including reporting any problems that arose.  Id. at *28.  Second, the plaintiffs were involved specifically with workplace safety issues.  Id. at *29.  One of the plaintiffs pointed to his expertise as support of his conclusions that the range was unsafe.  Id.  Third, the court noted that the plaintiffs did not identify anyone else whose job might have included reporting similar problems.  Id. at *31. Fourth, the court emphasized that, as police officers, the plaintiffs were required to speak through the chain of command, prevented from speaking to the press without prior approval, and expected to report their conclusions truthfully.  Id. at *28.

 In Weisbarth and Foraker, the plaintiffs were "specifically asked by [their] employer[s]" to participate in the alleged protected activity.  2007 U.S. App. LEXIS at *14; 2007 U.S. App. LEXIS at *16.  Here, Plaintiff was not simply "asked" but was actually "assigned" to the project.  The fact that he was "assigned" to the panel for the purpose of ranking architectural firms, which is now the very speech at issue "simply serves to render [his] actions more closely linked to [his] official

duties." Id. at *16-17 (internal citations omitted); see also D'Angelo v. Sch. Bd. of Polk County, 497 F.3d 1203 (11th Cir. 2007) (holding that the task need not be listed as an official job duty to demonstrate that the task is within the scope of the plaintiff's professional duties).

### C.  Plaintiff's Speech Relating to PAL Finances Was Made Pursuant to His Official Job Duties

The third of the four claimed incidents of protected speech occurred in connection with Plaintiff's PAL assignment.  While on assignment at PAL, Plaintiff alleges that he "was encouraged to provide blank checks to [a] PAL Board member."  (D.I. 15 at ¶51).  Plaintiff "refused to do so," stating that his refusal was made "as a matter of policy and general accounting principles."  (D.I. 15 at ¶51).

As with the allegation involving the Headquarters Project, this allegation is insufficient to withstand even the general pleading requirements of Rule 8.  Fed. R. Civ. P. 8(a).  Plaintiff does not identify who "encouraged" him to provide blank checks.  Nor does he indicate the circumstances of his "refusal" or the circumstances in which he "stated" that it would be a "mistake" to comply with the request.  (D.I. 15 at ¶51).

Again, these allegations are "insufficient in content, form, and context."  Savokinas, 2007 U.S. Dist. LEXIS at *11.  These insufficiencies preclude this allegation from serving as a valid basis for a First Amendment retaliation claim.  See Id.

The Amended Complaint states that Plaintiff was on official assignment at PAL.  (D.I. 15 at ¶51).  It can be implied, then, that any speech made during this assignment was made in his official capacity as an employee.

Plaintiff further admits that he declined to issue the blank checks due to "policy" as well as "general accounting principals."  (D.I. 15 at ¶51).  If "policy" is to be defined by inference, the "policy" must be NCCPD policy.  By acting in accordance with his obligations under NCCPD policy as a NCCPD employee, this speech must be described as speech made pursuant to his employment.

12

See Burns v. Borough of Glassboro, No. 05-3034-JBS, 2007 U.S. Dist. LEXIS 42069, at *21 (D.N.J. June 11, 2007) (finding plaintiff's speech to an internal affairs investigator, with whom he had an obligation to cooperate, was made pursuant to his duties as a police officer).

Presumably, if Plaintiff was "assigned to" PAL and was the gatekeeper of PAL's blank checks, then Plaintiff had a duty to preserve the integrity of PAL funds. By refusing to violate GAP, Plaintiff was executing what he believed to be his obligatory job duties. The speech occurred "during the course of performing an official duty and the speech reasonably contribut[ed] to [his] performance of the official duty." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007). Thus, the alleged speech was made pursuant to his official duties.

### D.  Plaintiff's Speech Relating to the Traffic Unit Was Made Pursuant to His Official Job Duties

The fourth of the four claimed incidents of protected speech occurred in connection with a policy change regarding staffing issues. (D.I. 15 at ¶52). Plaintiff alleges that he "communicated both in writing and orally" his displeasure with Colonel McAllister's decision to decrease the number of officers assigned to the Traffic Unit. (D.I. 15 at ¶52). Plaintiff wrote a memo "recommending" that no less than four officers be assigned to the Unit. (D.I. 15 at ¶53).

The Sixth Circuit addressed a similar set of facts in Haynes v. City of Circleville. 474 F.3d 357 (2006). The plaintiff in Haynes, a police officer, was a key player in the creation and development of a K-9 training program. Id. at 362. When the Police Chief decided to make cut-backs to the program, the plaintiff wrote him a memo criticizing the decision. Id. The court held that the memo, which focused on the plaintiff's objections to the new program, reflected no more than a disagreement over training resources. Id. at 365. Indeed, "the memo thus reflects nothing more than 'the quintessential employee beef: management has acted incompetently.'" Id. at 365 (emphasis supplied) (quoting Barnes v. McDowell, 848 F.2d 725, 735 (6th Cir. 1988)).

Plaintiff's memo to Colonel McAllister reflects no more than a disagreement over personnel and staffing. As in Haynes, "the context of Plaintiff's memo as a whole is best characterized as that of a disgruntled employee upset that his professional suggestions were not followed as they had been in the past." 474 F.3d at 364. Plaintiff's complaint about the number of officers assigned to the Traffic Unit is nothing more than a complaint than the typical "employee beef." Id.

Like the plaintiff in Haynes, Jamison's alleged speech was made pursuant to his official duties as a police officer. He spoke to his superior officer in the NCCPD chain of command. And he spoke exclusively about official police policies. There can be dispute, then, that Plaintiff's speech was made "in his capacity as a public employee contributing to the formation and execution of official policy." See Mills v. City of Evansville, 452 F.3d 646, 648 (7th Cir. 2006) (holding plaintiff-police officer's speech was unprotected where she expressed displeasure at the police chief's staffing initiative, which reduced the number of officers under her supervision).

Plaintiff's speech, which was made in his capacity as an employee and not as a citizen, is not eligible for the protections of the First Amendment. See Garcetti, 126 S. Ct. at 1960. Because none of the claimed instances of speech are entitled to the protections of the First Amendment, Count I must be dismissed for failure to state a claim.

## III.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As set forth in Part I, above, Plaintiff has failed to allege any wrongdoing by Defendants Cunningham and McAllister. Thus, they should be dismissed outright. In any event, all of the Individual Defendants are exempt from suit by reason of qualified immunity. Plaintiff has failed to carry his burden to allege that the Individual Defendants violated a clearly established constitutional right. See Hynson v. City of Chester, 827 F.2d 932, 934 (3d Cir. 1987). Here, the constitutional rights at issue include the right of a police officer to (1) order a reporting officer to uphold the law; (2) report his findings within the chain of command pursuant to his official assignment; (3) refuse to break from policy by providing blank checks from the funds he was assigned to manage; and (4)

complain about the police chief's staffing and personnel decisions. As stated above, in line with the Garcetti precedent, Plaintiff's speech was unprotected. His constitutional rights, therefore, were not violated by the Individual Defendants.

Even if it were determined that they are entitled to qualified immunity and their constitutional rights were violated, the Individual Defendants are still entitled to dismissal. Due to the unsettled state of the law regarding employee-speech versus citizen-speech, the Individual Defendants could reasonably have believed that they were not violating Plaintiff's constitutional rights. Thus, they are immune from suit.

### A. Qualified Immunity Is Appropriate Because the Alleged Speech Was Not Protected by the First Amendment

The Court must make a two-part inquiry in determining whether the Individual Defendants are entitled to qualified immunity. First, the court must determine whether the official's conduct violated a constitutional right. Siegert v. Gilley, 500 U.S. 226, 232 (1991). If no constitutional violation is established, the inquiry ends. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation occurred, the court must next ask, "in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Individual Defendants are exempt from suit under the first prong of the qualified immunity analysis. As set forth above, the Amended Complaint fails to allege the violation of a constitutional right. Plaintiff's speech was made in the context of his employment pursuant to his official job duties and, therefore, is unprotected by the First Amendment. Accordingly, Plaintiff cannot establish a violation of a constitutional right and the Individual Defendants are immune from the §1983 claim. See, e.g., Bevis v. Bethune, 232 Fed. Appx. 212, 216 (4th Cir. 2007) (granting qualified immunity where the plaintiff failed to show that he engaged in constitutionally protected speech); Green v. Barrett, 226 Fed. Appx. 883 (11th Cir. 2007) (same).

**B.  Qualified Immunity Is Appropriate Because the Alleged Speech Was Not "Prototypical Protected Speech" Entitled to "Clearly Established" Rights**

Even if the court found that a constitutional violation occurred, the second prong of the qualified-immunity analysis still requires dismissal of the Individual Defendants.  Where a constitutional right is violated, the question becomes whether that right was clearly established.  A constitutional right is clearly established, only if its contours are sufficiently clear to a reasonable official.  In other words, "in light of pre-existing law, the unlawfulness [of the alleged conduct] must be apparent."  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized."  Cameron v. Seitz, 38 F.3d 264, 272 (6th Cir. 1994) (internal citations omitted).

At this stage, the analysis turns to whether "the state of law at the time . . . gave the defendants fair warning that their conduct was unconstitutional."  Hartwell v. City of Montgomery, 487 F. Supp. 2d 1313, 1330 (M.D. Ala. 2007) (internal citations omitted).  Taking as true the allegations of the Amended Complaint, the relevant time period began as early as May 2002 with Plaintiff's reassignment to BMIS, (D.I. 15 at ¶90), and ended as late as December 2003 when Plaintiff was not promoted to Major or Lieutenant Colonel.  (D.I. 15 at ¶94).

**1.  The Procedural History of Garcetti Shows that Plaintiff's Speech Occurred During a Period When the Law Was Far From "Clearly Established"**

Given the procedural history of the Garcetti case, the state of the law regarding employee-speech was far from clearly established at the time of the alleged adverse actions.  See Phillips v. City of Dawsonville, No. 06-16031, 2007 U.S. App. LEXIS 21730, at *9 n.3 (11th Cir. Sept. 11, 2007) (granting qualified immunity because, due to the timing of the Garcetti decision, "the preexisting law at the time of the [adverse] decision was unclear on whether the First Amendment would be violated").

Garcetti filed his Complaint in the United States District Court for the Central District of California alleging unlawful retaliation based on speech he made in March 2000. Garcetti, 126 S. Ct. at 1956. The defendants appealed the decision of the trial court and the Ninth Circuit heard arguments on June 2, 2003. Ceballos v. Garcetti, 361 F.3d 1168 (9th Cir. 2004). The decision of the appellate court was appealed and the United States Supreme Court granted certiorari. The Court heard arguments on October 12, 2005, and issued its decision on May 30, 2006. Garcetti, 126 S. Ct. 1951.

Thus, the state of law regarding employee-speech has been in flux at least since the trial court dismissed Garcetti's claims in 2002. Garcetti v. Ceballos, D.C. No. CV-00-1106-AHV (C.D. Cal. 2002). The protections afforded to employee-made speech can not be said to have been "sufficiently clear that a reasonable official would understand that what he is doing violates that right," at least until the Supreme Court issued its decision in 2006. See Anderson v. Creighton, 483 U.S. 635, 639 (1987). Plaintiff's alleged speech occurred during this period or transition, prior to the issuance of Garcetti. Thus, reasonable officials could have disagreed on the state of the law, which was unsettled by the courts. The unsettled state of the issue requires a finding of qualified immunity.

## 2. None of Plaintiff's Alleged Speech Was the "Prototypical Public Speech" That Would Have Been "Clearly Protected" by the First Amendment

The Garcetti Court identified examples of the "prototypical public speech," such as making a public statement, discussing politics with a coworker, or writing a letter to a newspaper or legislator. 126 S. Ct. at 1961 (cited by Foraker, 2007 U.S. App. LEXIS at *34). Plaintiff has not alleged that he engaged in any "prototypical public speech" that would have been clearly protected at the time. See Crossin v. City of Athens, No. 06-3014, 2007 U.S. Dist. LEXIS 46585, at *16 (C.D. Ill. June 27, 2007) (granting summary judgment to the defendants where the plaintiff's speech "did not amount to the 'prototypical protected speech' identified by the Garcetti Court") (citing Spiegla v. Hull, 481 F.3d 961, 967 (7th Cir. 2007)). Instead, Plaintiff alleges that he communicated with a reporting officer

when he "ordered the Shift Commander" to uphold the law (D.I. 15 at ¶ 15), "operated within his

chain of command" when he submitted his rankings to the designated officer (D.I. 15 at ¶ 47),

refused to provide blank checks to a non-officer during his assignment at PAL in compliance with

policy and GAP standards (D.I. 15 at ¶51), and expressed displeasure to his superior officer about a

new NCCPD staffing policy.  (D.I. 15 at ¶53).

        None of Plaintiff's allegations involve speaking out to the press or the public at large.  None

of the allegations involve any political discussion with other NCCPD officers.  And none of the

allegations made in Plaintiff's Amended Complaint involve petitioning the government by writing a

memo to a legislator.  Because none of the "prototypical" instances of protected speech are present,

Plaintiff's speech necessarily involves a "a relatively close case on the question of whether [the

plaintiff] spoke as a citizen on a matter of public concern."  Thus, in light of the pre-existing law, the

speech alleged by Plaintiff would not necessarily have been "clearly" protected at the time it was

made.

        The plaintiff in Adamow v. Miami University alleged that the defendants were not entitled to

qualified immunity because there was a genuine issue as to whether her constitutional rights had been

violated.  No. C-1-05-104, 2007 U.S. Dist. LEXIS 72004, at *29-30 (S.D. Ohio Sept. 27, 2007).  The

court rejected this argument.  The court agreed that there were some factual issues as to whether the

plaintiff's speech was protected.  Id. at *30.  Yet, qualified immunity was still appropriate because,

"in view of the holding in Garcetti, it was not clearly established at the time plaintiff engaged in the

speech that such speech was entitled to First Amendment protection."  Id.  Qualified immunity is

appropriate where the parties reasonably dispute in what context, employee or citizen, the speech was

made.  See Campbell v. Galloway, 483 F.3d 258 (4th Cir. 2007).

        In Hartwell v. City of Montgomery, the court found that the plaintiff's speech was made as a

citizen, not as an employee, and was thus a right protected by the First Amendment.  487 F. Supp. 2d

at 1330.  The court then turned to the second prong of the qualified immunity analysis to determine

whether the right that was violated was a clearly established one.  Id.  In short, the court granted

qualified immunity to the defendant because it was not obvious whether the plaintiff spoke as a

citizen or an employee.  Id. at 1332; see also Campbell, 483 F.3d 258 ("Because the facts of this case

are close enough to the ill-defined line between private speech and speech involving matters of

public concern, we cannot hold the defendants responsible for their reasonable but incorrect guess

about how the law would apply to the facts of this case.").

Here, Defendants contend that Plaintiff's speech was made pursuant to his official

employment duties and, therefore, is not protected by the First Amendment.  For Plaintiff to contest

the present Motion, he must argue that his speech was made in his role as a citizen.  By propounding

that argument, Plaintiff is necessarily arguing that his speech was not "clearly established" as

protected.  In short, by opposing the dismissal of Count I, Plaintiff provides the support necessary for

dismissal of the Individual Defendants.  See Hartwell, 487 F. Supp. 2d at 1331 (granting qualified

immunity because of the uncertainty in the pre-existing First Amendment law and because it was "a

relatively close case on the question of whether [the plaintiff] spoke as a citizen on a matter of public

concern"); see also, 483 F.3d 258  (granting qualified immunity because "the speech at issue in this

case falls within the gray area between speech that clearly is a matter of public concern and speech

that is not").

In this case, Defendants provide well-supported arguments demonstrating that the speech at

issue is employee-made speech unprotected by the First Amendment.  The Individual Defendants

could not have violated Plaintiff's "clearly established rights" because, until Garcetti, the rights

afforded to employee-made speech was an unsettled area of the law.  Thus, the Individual Defendants

are immune from suit and should be dismissed from this matter.

## CONCLUSION

For the reasons set forth in the brief above, Defendants request that their Partial Motion to Dismiss be granted and Count I be dismissed.  Defendants Cunningham and McAllister further request that they be dismissed from both Counts of the Amended Complaint and from the matter entirely.  Finally, the Individual Defendants request that they be dismissed from the matter pursuant to the doctrine of qualified immunity.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ William W. Bowser*
William W. Bowser, Esquire (No. 2239)
Margaret M. DiBianca, Esquire (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6601
Facsimile: (302) 576-3282
Email:  wbowser@ycst.com
Attorneys for Defendant New Castle County

NEW CASTLE COUNTY LAW DEPARTMENT

*/s/ Eric L. Episcopo*
Eric L. Episcopo, Esquire (No. 2258)
87 Reads Way
New Castle, DE  19720-1648
Telephone: (302) 395-5130
Facsimile: (302) 395-5150
Email:  eepiscopo@co.new-castle.de.us
Attorneys for Defendants

*/s/ Charles E. Butler*
Charles E. Butler, Esquire (Bar I.D. 2349)
1224 North King Street
Wilmington, Delaware 19801
Telephone: (302) 655-4100
Facsimile: (302) 655-4212
 ceb@cebutler.com
Attorneys for Defendants Sherry Freebery, Thomas P.
Gordon, and Colonel David F. McAllister, each in their
individual capacity


OBERLY JENNINGS & RHODUNDA, P.A.

*/s/ Kathleen M. Jennings*
Kathleen M. Jennings, Esquire (Bar I.D. 913)
1220 North Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899-2054
Telephone: (302) 576-2000
Facsimile: (302) 576-2004
kjennings@ojlaw.com
Attorneys for Defendant Colonel John Cunningham


Dated:  October 31, 2007